Eli KALKSTEIN, Plaintiff,

v.

COLLECTO, INC., Defendant.

No. 13–cv–2621 (ADS)(AKT).

United States District Court, E.D. New York.

Signed Jan. 2, 2015.

Filed Jan. 5, 2015.

Bromberg Law Office, P.C. by: Brian L. Bromberg, Esq., Joseph Mauro, Esq., of Counsel, New York, NY, for the Plaintiff.

Zeldes, Needle & Cooper P.C. by: Jonathan David Elliot, Esq., Drummond C. Smith, Esq., of Counsel, Bridgeport, CT, for the Defendant.

## MEMORANDUM OF DECISION & ORDER

SPATT, District Judge.

This case arises out of the attempted collection by the Defendant Collecto, Inc. (the "Defendant") of a debt allegedly owed by the Plaintiff Eli Kalkstein (the "Plaintiff") to the New York Institute of Technology ("N.Y. Tech") for tuition expenses. On April 30, 2013, the Plaintiff filed a complaint asserting that the Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and seeking (i) statutory damages, (ii) compensatory damages, (iii) attorneys' fees and litigation expenses, (iv) a declaratory judgment that the Defendant violated the FDCPA, and (v) any other relief the Court deems proper.

Presently before the Court is a motion by the Plaintiff for an order permitting this case to proceed as a class action against the Defendant pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 23. For the reasons set forth below, the Court grants the Plaintiff's motion.

## I. BACKGROUND

### A. *Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y.2013)*

As an initial matter, the Court notes that it certified a class in *Annunziato v. Collecto, Inc.,* 293 F.R.D. 329, 333 (E.D.N.Y.2013) (Spatt, J.), which was substantially similar to the proposed class in the instant case. The plaintiff in *Annunziato,* similar to the Plaintiff here, was a former student at N.Y. Tech who received a letter from the Defendant in which the Defendant sought to collect a debt from him for tuition expenses and charge him a collection fee of forty-two percent of the principal balance of his alleged debt to N.Y. Tech. *Id.* at 332.

As discussed in more detail below, the letter sent by the Defendant to class members in *Annunziato* differed slightly from the letter at issue in the instant case. In particular, the letter at issue in *Annunziato* was sent by the Defendant to the plaintiff on May 16, 2012 and stated "our client has the right to take further steps to collect this account." *Annunziato*, 293 F.R.D. at 332. Here, the Defendant sent a letter to the Plaintiff on January 16, 2013, which stated, "[w]e may report information about your account to credit bureaus." (Am. Compl., Ex. A).

However, the Court finds these distinctions to be immaterial because the claims involve the same core allegations against the Defendant—namely, that the Defendant (i) sent proposed class members a letter purporting to collect a debt that may be time-barred; (ii) improperly purported to charge the class members with collection fees even though N.Y. Tech and the class members had not entered into an agreement regarding collection fees; and (iii) improperly inflated collection fees and expenses to intimidate the class members into paying the putative debt. *See Annunziato*, 293 F.R.D. at 336 ("In this case, [the] [p]laintiff alleges that the [d]efendant directed the same unlawful conduct toward the [p]laintiff and the proposed class by allegedly sending to all proposed class members identical form letters which improperly imposed a 42% collection fee and deceptively threatened to take 'further steps' in debt collections.").

Therefore, the Court finds *Annunziato* to be directly applicable to this case. As is set forth below, this case, together with other FDCPA cases, militate toward granting the Plaintiff's present motion.

## B. The Instant Case

In the instant case, the Plaintiff is a citizen of New York State who resides in this District. (Am. Compl. at ¶ 2.) The Defendant is a company that engages in the collection of debts allegedly owed to others. (*Id.* at ¶ 6.)

On an unspecified date, N.Y. Tech hired the Defendant to collect a debt allegedly owed by the Plaintiff to N.Y. Tech for tuition expenses. (*Id.* at ¶ 14.) In that regard, on January 16, 2013, the Defendant sent a letter that detailed the Plaintiff's alleged debt as follows:

| | |
|---|---|
| Principal: | $5,172.00 |
| Interest: | $0.00 |
| Fees/Coll Costs: | $2,216.57 |
| Other Accounts: | $0.00 |
| **Total Due:** | **$7,388.57** |

(*Id.*) The fees and collection costs listed in the letter consisted of forty three percent of the principal of the alleged debt that the Plaintiff owed to the Defendant. (Am. Compl. at ¶ 19.) The Plaintiff alleges that he never agreed to pay forty three percent of the principal as fees and collection costs in connection with his debt to N.Y. Tech. (*Id.* at ¶ 21.) The Plaintiff further alleges that the Defendant intentionally inflated its collection fees and costs to "intimidate and scare [the] Plaintiff into paying the so-called 'Principal.'" (*Id.*)

The letter further states: "[N.Y. Tech] has placed your account with us for collection. This is a demand for payment of your debt. We urge you to remit payment to our office, unless you dispute this debt.... We may report information about your account to credit bureaus." (Am. Compl., Ex. A.)

As of January 16, 2013, when the Defendant mailed the letter to the Plaintiff, he alleges that he had not attended or been a student at N.Y. Tech for more than 14 years. (Am. Compl. at ¶ 13.) The Plaintiff asserts that Defendant is legally prohibited from reporting a debt to credit bureaus that is more than eight years old. (*Id.* at ¶ 25.) As a result, the Plaintiff further asserts that the Defendant's statement that it "may report information about your account to credit bureaus" is false because the period during which the Defendant could report the debt to credit bureaus had expired. (*Id.* at ¶ 19.) However, the Plaintiff does not specify the statute or body of law which allegedly provides for an eight year statute of limitations for reporting debts to credit bureaus.

The Defendant sent letters to 360 individuals with a mailing address in New York State who allegedly attended N.Y. Tech using language that was "identical" to the language that the Defendant used in its January 16, 2013 letter to the Plaintiff. (The Def.'s Re-

sponses to the Pl.'s First Set of Interrogatories at 2.)

The Plaintiff alleges that by sending these letters, the Defendant violated FDCPA § 1692. The amended complaint defines the proposed class as follows:

All individuals who (a) have mailing addresses within New York State; (b) who between July 20, 2012 and April 30, 2013; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was outside the permissible credit reporting period; (e) or containing a collection fee that had not been previously authorized by agreement with N.Y. Tech; (f) which was not returned by the postal service as undelivered.

(Am. Compl. at ¶ 31.)

## II. DISCUSSION

### A. Legal Standards

"The FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *Nasca v. GC Servs. Ltd. Partnership*, No. 01CIV10127 (DLC), 2002 WL 31040647, at *4 (S.D.N.Y. Sept. 12, 2002).

The Plaintiff alleges that by sending the January 16, 2013 letter to the Plaintiff, and similar letters to 360 potential class members, the Defendant violated FDCPA §§ 1692 e, f, and g.

In particular, FDCPA § 1692e provides that a debt collector violates the FDCPA by making a "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C.A. § 1692e (West). The Plaintiff alleges that the Defendant violated this provision of the FDCPA by sending a letter to him which "falsely represent[ed] services rendered and compensation which may be lawfully received by Defendant for

the collection of the alleged debt [to N.Y. Tech]." (Am. Compl. at ¶ 37.)

FDCPA § 1692f provides that a debt collector may not collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f (West). The Plaintiff alleges that there was no agreement between the Plaintiff and N.Y. Tech with respect to collection expenses and therefore, the Defendant also violated this provision of the FDCPA when sending a letter to the Plaintiff purporting to charge him collection expenses. (Am. Compl. at ¶ 38.)

FDCPA § 1692g provides that a debt collector must "within five days after the initial communication with a consumer in connection with the collection of a debt," send the consumer a "written notice containing," among other things, "(1) the amount of the debt." 15 U.S.C.A. § 1692g (West). The Plaintiff alleges that the Defendant violated this provision of the FDCPA by "incorrectly stating the amount of [his] alleged debt [to N.Y. Tech]." (Am. Compl. at ¶ 39.)

The Plaintiff seeks to certify a proposed class pursuant to Fed.R.Civ.P. 23(b)(3) of individuals who allegedly received substantially similar notices from the Defendant between July 30, 2012 and April 30, 2013.

To certify a Rule 23(b)(3) class, the movant must first show that the proposed class satisfies the requirements of Rule 23(a), namely: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997).

In addition, the proposed class must satisfy the requirements of Rule 23(b)(3): (1) "[c]ommon questions ... 'predominate over any questions affecting only individual members'" ("predominance requirement"); and

(2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority requirement"). *Id.* This rule is designed to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051(CM), 2014 WL 4401280, at *13 (S.D.N.Y. Sept. 4, 2014).

The movant bears the burden of establishing each requirement under Rule 23 for class certification, and the failure to meet any one of Rule 23's requirements destroys the alleged class action. *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69–70 (E.D.N.Y.2000).

## B. As to Whether the Proposed Class Satisfies the Rule 23(a) Requirements

### 1. Numerosity

"Numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). The movant "need not provide a precise quantification of their class, since a court may make 'common sense assumptions' to support a finding of numerosity." *Pecere*, 194 F.R.D. 66, 70 (E.D.N.Y.2000) (citing *LeGrand v. New York City Transit Auth.*, No. 95–CV–0333 (JG), 1999 WL 342286, *3 (E.D.N.Y. May 26, 1999)). Nevertheless, the Plaintiff must "show some evidence of or reasonably estimate the number of class members." *Id.*

The Defendant argues that the proposed class does not satisfy the numerosity requirement because the Plaintiff offers only conclusory assertions that there will be more than forty proposed class members. The Court disagrees.

The Plaintiff relies on an admission by the Defendant that it sent letters to 360 individuals with a mailing address in New York State who allegedly attended N.Y. Tech using language that was "identical" to the language that the Defendant used in the January 16, 2013 letter that it sent to the Plaintiff. (The Def.'s Responses to the Pl's First Set of Interrogatories at 2.) The Court finds that the Plaintiff "on this basis, relying on the Defendant's admission, provides a reasonable estimate of the size of the class." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 335 (E.D.N.Y.2013)

The Defendant further argues that many of the 360 individuals to whom the Defendant sent letters may not be members of the proposed class because: (i) their debts were well within the statute of limitations; or (ii) they had entered into agreements with N.Y. Tech authorizing collection fees. (The Def.'s Opp'n Mem. of Law at 12.)

However, this Court in *Annunziato* rejected the very same argument: "Indeed, the fact that some of the proposed class members may turn out to not be members of the class does not prevent the Court from finding that the class is sufficiently numerous, as it is still likely that a significant portion of the 1288 consumers (1) had debts that fell outside the statute of limitations and (2) did not enter into an underlying agreement with N.Y. Tech authorizing collection charges." 293 F.R.D. at 335; *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 441, 2014 WL 6983456, at *4 (E.D.N.Y.2014) ("Even if such deductions were made, the Court nevertheless finds that the putative class of even possibly less than approximately 87 members satisfies the numerosity element."); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 381 (E.D.N.Y.2013) ("With regard to numerosity, as an initial matter, there is no requirement that the exact number of class members be known for class certification.").

Accordingly, the Court finds that the proposed class satisfies the numerosity requirement.

### 2. Commonality and Typicality

A court may find a common issue of law or fact if the movant "identif[ies] some unifying thread among the members' claims." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y.2008) (internal quotation

marks and citations omitted). Notably, a common issue of law can be found even though there exists "some factual variation among class members' specific grievances." *Id.* (internal quotation marks and citations omitted). Further, "[e]ven a single common legal or factual question will suffice." *Lizondro–Garcia v. Kefi LLC,* 300 F.R.D. 169, 175 (S.D.N.Y.2014) (internal quotation marks and citations omitted).

■ "Typicality ... is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Kelen v. World Fin. Network Nat. Bank,* 302 F.R.D. 56, 65 (S.D.N.Y.2014) (citing *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997)).

Here, the Plaintiff proposes the following class definition:

> All individuals who (a) have mailing addresses within New York State; (b) who between July 20, 2012 and April 30, 2013; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was outside the permissible credit reporting period; (e) or containing a collection fee that had not been previously authorized by agreement with N.Y. Tech; (f) which was not returned by the postal service as undelivered.

(Am. Compl. at ¶ 31.)

■ With respect to commonality, the Defendant argues that class members could not be readily identified without an individualized consideration of facts relating to each class member. (The Def.'s Mem. of Law at 8.) In particular, the Defendant argues that the Court will have to determine whether each potential class member had an agreement with N.Y. Tech to pay collection costs. (*Id.* at 9.) The Defendant further argues that the Court will have to determine for each potential class member whether his or her debt was incurred prior to the permissible credit reporting period. (*Id.* at 9.) Again, the Court disagrees.

For each class member, the Court will likely be able to determine eligibility for the class in large part by reviewing the letter sent by the Defendant to that individual; the Defendant's records as to when the individual's debt was incurred; and whether there was an agreement regarding collection costs. The Court does not find such tasks to be particularly arduous, nor have other courts. *See Butto v. Collecto Inc.,* 290 F.R.D. 372, 383 (E.D.N.Y.2013) (Spatt, J) ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."); *see also Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir.1974) ("Even if it is necessary to review the contracts individually to eliminate business purchases ..., 'such a task would be neither herculean, inhibiting, nor for that matter ... unique.' ").

Even if making eligibility determinations required the Court to conduct somewhat time-consuming individual inquiries, this fact alone would not defeat commonality under Rule 23(a). As stated above, commonality may be met for purposes Rule 23(a) even "when individual circumstances of class members differ," so long as the movant shows that the proposed class members' "injuries derive from a unitary course of conduct." *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 338 (S.D.N.Y.2004) (citing *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997)). Here, the proposed class easily meets this standard because the resolution of the action will depend on whether the Defendant's conduct in sending the letters to the class members violated the provisions of the FDCPA. *Annunziato,* 293 F.R.D. at 336 ("In the Court's view, the Plaintiff has established commonality because the resolution of this action will rest on whether or not the Defendant's alleged conduct in sending the form letters violated numerous provisions of the FDCPA.").

■ Lastly, the Defendant contends that the proposed class does not satisfy the typicality standard because the Plaintiff claims that he did not enter into an agreement with N.Y. Tech with regard to fees and expenses. (The Def.'s Opp'n Mem. of Law at 14.) FDCPA § 1692f provides that a debt collector may not collect "any amount (including

any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f (West). As such, the Defendant argues that the Plaintiff's claims may be stronger than those potential class members who have entered into agreements with N.Y. Tech. (The Def.'s Opp'n Mem. of Law at 14.) Here too, the Court disagrees.

The proposed class easily meets the typicality requirement because each class member's claim arose from the same letter mailed by the Defendant. Thus, the Court finds, as it did in *Annunziato*, that the proposed class satisfies the typicality requirement irrespective of any individual differences in the strength of the class members' individual claims. *See* 293 F.R.D. at 337 ("[T]he [p]laintiff and class members will set forth the same claims based on the alleged FDCPA violations in the form letters.").

Accordingly, the Court finds that the proposed class satisfies the commonality and typicality requirements of Rule 23(a).

### 3. Adequacy of Representation

■ The adequacy requirement of Rule 23(a)(4) involves the inquiry as to "whether: (1)[the] Plaintiff's interests are antagonistic to the interests of the other members of the Class; and (2)[the] Plaintiff's counsel are qualified, experienced, and capable of conducting the litigation." *Yang*, 2014 WL 4401280 at *12 (citing *Baffa v. Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Both requirements are satisfied here.

With respect to the second inquiry, the Defendant does not contest the adequacy of plaintiff's counsel. Even if it had, this Court found that the Plaintiff's counsel was adequate in *Annunziato* under nearly identical circumstances. 293 F.R.D. at 338 ("First, the Plaintiff's counsel have extensive experience in litigating matters under the FDCPA both in class actions and in individual suits."). The Court finds no reason, nor does the Defendant offer one, as to why the analysis of the qualifications of the Plaintiff's counsel should be any different here.

■ With respect to the first inquiry, the Court finds that the Plaintiff's interests are aligned with the interests of the proposed class because their claims arise from the same letters sent by the Defendant. (The Def.'s Responses to the Pl.'s First Set of Interrogatories at 2.); *see In re Sinus Buster Products Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *5 (E.D.N.Y. Nov. 10, 2014) (Spatt, J) ("[T]he Court finds that the [p]laintiffs' interests are aligned with the interests of the proposed class because their claims arise from the same course of conduct by the [d]efendants— namely, the [d]efendants' alleged misrepresentations in connections with its marketing of Sinus Buster products.").

In response, the Defendant argues that the Plaintiff is not an adequate representative of the proposed class because he did not pay a collection fee. (The Def.'s Opp'n Mem. of Law at 15.) In particular, the Defendant asserts that because the Plaintiff did not pay a collection fee, he is only entitled to statutory damages under the FDCPA. (*Id.*) As such, the Defendant posits that the Plaintiff would not be an adequate representative of the proposed class members who did pay a collection fee, and therefore, may have suffered additional compensatory damages. (*Id.*) The Court disagrees.

The Defendant does not offer any evidence that proposed class members paid collection fees. Moreover, even if there were differences with respect to collection fees, the Court can see no reason why this difference would create a conflict of interest between the Plaintiff and other class members because their interests in maximizing the class recovery would be aligned. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y.2011) ("As this Court has noted, the conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff.") (*Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931 at *4, 2008 U.S. Dist. LEXIS 38729 at *13 (S.D.N.Y. May 9, 2008)); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y.2004) ("Such conclusory assertions of inadequacy are, however, insufficient to

rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which Sczesny Trusts would be uniquely subject.").

Therefore, the Court finds that the Plaintiff and his counsel satisfy the adequacy of representation requirement.

## C. As to Whether the Proposed Class Satisfies the Rule 23(b) Requirements

As stated above, the proposed class must satisfy the requirements of Rule 23(b)(3): (1) "[c]ommon questions ... 'predominate over any questions affecting only individual members' " ("predominance requirement"); and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority requirement"). *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231. The Court finds that the proposed class satisfies both requirements.

### 1. Predominance

To satisfy the predominance standard, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Advanced Battery Technologies, Inc. Sec. Litig.,* 298 F.R.D. 171, 182 (S.D.N.Y.2014) (citing *In re Salomon Analyst Metromedia Litig.,* 544 F.3d 474, 480 (2d Cir.2008)) (internal quotation marks omitted). The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.*

As in *Annunziato,* the Court finds that "the non-common questions, such as the question of actual damages, are not more substantial than the common question of whether the form letters were illegal." 293 F.R.D. at 340; *see also Sharf v. Fin. Asset Resolution, LLC,* 295 F.R.D. 664, 671 (S.D.Fla.2014) ("[The] [p]laintiff argues that Rule 23(b)(3)'s predominance requirement is satisfied because all the claims stem from a form letter that [the] [d]efendant sent to all members of the proposed classes.... The Court agrees. Because the main issue in

dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate.").

The fact that some class members may be subject to individual defenses regarding agreements with N.Y. Tech regarding collection charges does not, as the Defendant contends, change this result. Indeed, the court in *Hallmark v. Cohen & Slamowitz LLP,* No. 11–CV–842S (WMS), 2014 WL 51322, at *2 (W.D.N.Y. Jan. 8, 2014) rejected a nearly identical argument by a defendant against certifying an FDCPA action. The court noted that "[d]iscovery, about which there are ongoing disputes, may reveal that underlying agreements, if they exist, are likely to bar claims against some class members." *Id.* However, even if agreements are produced by the defendant and individual differences among class members predominate, the court found that there are "available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, exclude them from the class altogether, or it can decertify the class." *Id.* (citing *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 45 (E.D.N.Y. 2008)). The Court further observed that "these agreements, which purportedly authorize the collection of court costs, are presumably in the [d]efendants' possession. Yet none has been adequately identified, filed with the [c]ourt, or (to this [c]ourt's knowledge) turned over to the [p]laintiff[.]" *Id.* Accordingly, the court found that the proposed class had satisfied the typicality and commonality requirements of Rule 23(a), as well as the more onerous predominance and superiority requirements of Rule 23(b). *Id.; see also Butto,* 290 F.R.D. at 384 ("What is relevant and what ultimately drives this analysis is that even if this defense is presumed valid, the existence of such an individualized defense would not preclude class certification. This is because Collecto has not explained how this potential defense would threaten to become the focus of the litigation.").

Here, as in *Hallmark,* the Defendant has not explained how its purported agreements with individual class members would become

a focus of the litigation. Indeed, as the Plaintiff correctly points out, the Defendant has not attached or pointed to such an agreement, rendering its claim regarding the agreements to be entirely speculative at this stage of the litigation. *See Hallmark*, 2014 WL 51322, at *2 ("Indeed, these agreements, which purportedly authorize the collection of court costs, are presumably in [the] [d]efendants' possession. Yet none has been adequately identified, filed with the [c]ourt, or (to this [c]ourt's knowledge) turned over to [the] [p]laintiff.").

Accordingly, the Court finds that the proposed class satisfies the predominance requirement.

### 2. Superiority

■ The superiority element of Rule 23(b)(3) requires the court to examine whether a class action is superior to other methods of adjudication. There are four factors that a court can consider in determining whether a proposed class meets the superiority requirement:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Annunziato*, 293 F.R.D. at 340 (quoting Fed. R.Civ.P. 23(b)(3)).

"[C]lass treatment is often deemed superior in 'negative value' cases, in which 'each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.' " *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y.2014) (citing *Menkes*, 270 F.R.D. at 100).

The Court finds the instant case to be analogous to a "negative value case" in that the likely amount of individual recovery appears to be slight when compared with the costs required to bring an individual case.

*Annunziato*, 293 F.R.D. at 340 ("[T]he amount of each class members individual claims is very small so it is not likely that any of them would have a specific interest in individually controlling the prosecution of the action."); *see also In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921 at *6 ("The instant case presents the classic 'negative value' case because there are thousands of potential plaintiffs and each individual plaintiff's claims is worth a small amount at most what they paid for a Sinus Buster product, which were sold at retail for around 'five dollars.' ").

Moreover, the class device would provide the most efficient method of adjudicating the class members' claims because, as described above, the resolution of the class members' claims depends on a common question— whether the Defendant's letters purporting to collect a debt owed by them to N.Y. Tech violated the FDCPA. *See In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921 at *6 ("Therefore, the class action device will prevent inefficient and inconsistent outcomes associated with multiple litigations involving the same set of facts."); *Sharf*, 295 F.R.D. at 671 ("When common issues predominate over individual issues, a class action lawsuit is an appropriate vehicle for adjudicating the plaintiffs' claims.... Here, the proposed class members' claims are predicated on a common set of facts and concern the same allegedly deceptive practices.").

In response, the Defendant argues that the class action device is not superior to individual actions because individual plaintiffs may be eligible to recover greater damages than permitted under a class action. In particular, the Defendant states that an individual can bring an action under the FDCPA for statutory damages, which are capped at $1,000, and "actual damage[s]," which are not capped. 15 U.S.C.A. § 1692k (West). On the other hand, in a class action, the class's total recovery cannot "exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." *Id.*

On the record before it, the Court cannot conclude that each individual class member would recover more if they proceeded indi-

vidually than if they proceeded as a class. Indeed, the Defendant does not specify what its net worth is, nor is it clear that any individual class member suffered actual damages greater than the $1,000 statutory maximum. In any event, this Court has certified a class action notwithstanding the possibility of higher individual recoveries because of the transaction costs involved in bringing an FDCPA action on an individual basis. *See Kalish v. Karp & Kalamotousakis, LLP,* 246 F.R.D. 461, 464 (S.D.N.Y.2007) ("In the FDCPA context, while the potential for higher individual recoveries exists, realizing that potential requires assuming that each putative class member is 'aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case.' Those transaction costs are not insubstantial and have prompted other courts in this Circuit to conclude that litigating as a class is superior to litigating individual FDCPA claims." (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997))); *see also Weber v. Goodman,* 9 F.Supp.2d 163, 170 (E.D.N.Y.1998) ("The small damage awards available to individual plaintiffs under the FDCPA are a likely factor in the lack of individual lawsuits. Therefore, this case appears to fit easily within the above described and accepted category of cases in which a class action is the superior method of adjudicating the controversy."), *opinion modified on reconsideration on other grounds,* No. CV–97–1376 (CPS), 1998 WL 1807355 (E.D.N.Y. June 1, 1998).

Therefore, the Court concludes that the superiority requirement is satisfied.

### D. *As to the Plaintiff's Proposed Class Definition*

The next question is whether the definition of the class proposed by the Plaintiff is an appropriate one. *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg,* 290 F.R.D. 409, 420 (S.D.N.Y.2012). Under Rule 23, a district court has discretion to amend class definitions or decertify classes as necessary. *Id.; see also Morangelli v. Chemed Corp.,* 275 F.R.D. 99, 114 (E.D.N.Y. 2011), ("The court may, in its discretion.... modify the definition of the proposed class to

provide the necessary precision or to correct other deficiencies. In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision.") (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[6] ).

Here the Plaintiff proposed the following class definition:

> All individuals who (a) have mailing addresses within New York State; (b) who between July 20, 2012 and April 30, 2013; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was outside the permissible credit reporting period; (e) or containing a collection fee that had not been previously authorized by agreement with N.Y. Tech; (f) which was not returned by the postal service as undelivered.

(Am. Compl. at ¶ 31.) This definition is nearly identical to the definition that this Court approved in *Annunziato.* There are only two minor differences between the definition approved in *Annunziato* and the instant case. First, the periods of eligibility are slightly different: in *Annunziato,* the proposed class members must have received letters from the Defendant between August 9, 2012 and August 9, 2013. 293 F.R.D. at 343. Here, they must have received letters from the Defendant between July 20, 2012 and April 20, 2013. (Am. Compl. at ¶ 31.)

Second, in *Annunziato,* to qualify as a class member, he or she must have received a letter from the Defendant "regarding a debt that was time-barred by the applicable statute of limitations." 293 F.R.D. at 343. Here, the proposed class members must have received letters from the Defendant "regarding a debt that was outside the permissible credit reporting period." (Am. Compl. at ¶ 31.)

As stated previously, the Court does not find these differences to be material because both cases involve the same core allegation that the Defendant sent letters to former N.Y. Tech students that purported to collect alleged debts to N.Y. Tech that were inflated

and time-barred, and thus in violation of the FDCPA.

Therefore, the Court approves the Plaintiff's proposed class definition.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Plaintiff's motion to certify this class is granted in its entirety.

**SO ORDERED.**